O

# United States District Court
# Central District of California

| | |
|---|---|
| NERSES MEGUERDITCHIAN,<br><br>  Plaintiff,<br>  v.<br><br>AETNA LIFE INSURANCE COMPANY, FEDERAL EXPRESS CORPORATION SHORT TERM DISABILITY PLAN and DOES 1–10, inclusive,<br><br>  Defendants. | Case No. 2:12-cv-10999-ODW(JCx)<br><br>**ORDER REVERSING ADMINSTRATOR'S DECISION AND REMANDING FOR DECISION ON THE MERITS [36]** |

## I. INTRODUCTION

This case presents a dispute concerning a short-term disability benefit plan offered by Nerses Meguerditchian's employer, Federal Express Corporation ("FedEx"). When Meguerditchian was injured at work, Aetna Life Insurance—the claims-paying administrator of the policy—denied Meguerditchian's claim as untimely. As a result Meguerditchian brought his action seeking recovery of benefits under Employee Retirement Income Security Act (ERISA) §502(a)(1)(B). For the

1 reasons discussed below, the Court **REVERSES** the administrator's denial of
2 Meguerditchian's STD benefits claim as untimely and **REMANDS** this case to the
3 claims-paying administrator for a decision on the merits.

## II.   FACTUAL BACKGROUND

FedEx sponsors a Short-Term-Disability Plan ("STD Plan") for the benefit of its employees. (AR 168.) FedEx is the STD Plan Administrator—it funds and administers the plan but does not make benefit- eligibility determinations. (AR 169, AR 201-02.) Instead, Aetna Life Insurance Company acts as the claims-paying administrator for the STD Plan. (AR 169.) Aetna makes eligibility determinations and pays claims on behalf of the STD Plan. (*Id.*) The STD Plan provides Aetna with full discretion and authority to determine eligibility for benefits and to construe and interpret all of the Plan's terms and provisions.

Meguerditchian was hired by FedEx on February 25, 1991, as a Senior Global Vehicle Technician. (AR 27–28, 35). Meguerditchian provided full-time field operation and maintenance work for FedEx's field vehicle fleet and ground equipment. (AR 28). As a covered employee, Meguerditchian was entitled to disability benefits if he became disabled as that term is defined by the STD Plan. (AR 179). The STD Plan provides a weekly disability benefit equal to 70% of the employee's weekly income, subject to reduction by any other income. (AR 179, AR 184-188.)

**A. Pertinent Plan Provisions**

To be eligible for STD Benefits, an employee must meet the requirements for an Occupational Disability—"the inability of a Covered Employee, because of a medically-determinable physical impairment or Mental Impairment, to perform the duties of his regular occupation." (AR 170-171.)

The STD Plan states that notice of claim for Disability be timely submitted to receive to receive STD benefits. The plan provides, in relevant part,

/ / /

>Notice of a claim for Disability Benefits under the Plan must be given to the Claims Paying Administrator by the Covered Employee or his representative in the manner determined by the Administrator within 60 days . . . of [] the date of the commencement of the Covered Employee's Disability or recurring Disability (as described in Section 3.5).

(AR 191-192.) The Plan also provides that an employee is responsible for filing a claim for short-term disability benefits from the STD Plan by calling Aetna "as soon as you know you will be *unable to work* for more than your medical absence or elimination period." (AR 104) (emphasis added).

## B. FedEx's Temporary Return to Work Program

FedEx also maintains a Temporary Return to Work Program (TRW Program) which it describes as follows,

>Temporary Return to Work (TRW) enables you to return to work temporarily if you cannot perform the full range of your regular job duties, but your health care professional has said you may return to work with limitations and restrictions. You can work in a TRW position for up to 90 calendar days while you are disabled; you must work at least 15 hours a week but no more than: . . . 28 hours a week if you are on STD

(AR 106). FedEx's TRW Program does not just enable employees to return to work; FedEx requires that eligible employees do so in order to maintain their STD Benefits. The TRW Program explicitly states that employees "must participate or [their] STD or LTD benefits will stop." (*Id.*) Meguerditchian worked under the TRW program until April 17, 2011, when he completed the maximum 90 days of work under the program (AR 38).

## C. Meguerditchian's Claim for Benefits

Megureditchian injured his back on January 10, 2011, while working on a FedEx vehicle. (AR 34.) Soon after, Meguerditchian began experiencing severe back pain
/ / /

and numbness in his left leg.  (*Id.*)  He visited his primary care physician and was instructed to stop working based upon MRI Results.[1]  (AR 8).   It is unclear from the administrative record whether Meguerditchian's doctor permitted him to return to work with limitations, but Meguerditchian continued to work under FedEx's TRW program until April 18, 2011.  (*Id.*)

Eight days later, Meguerditchian contacted Aetna to initiate a claim for STD Benefits.  (AR 38).   In a letter dated May 10, 2011, Aetna denied Plaintiff's claim for STD Benefits as untimely—Aetna received notice of his claim on April 25, 2011, 99 days after the date Meguerditchian reported disability began.  (AR 4).  In the letter, Aetna noted that the STD Plan required employees to notify the claims-paying administrator within 60 days of the commencement of a disability.  Aetna also informed Meguerditchian that he must file any appeal of the denial of his claim within 180 days.  (AR 4-5).

**D. Meguerditchian's Appeal**

On October 7, 2011, Meguerditchian appealed the denial of his claim for STD Plan benefits.  (AR 6).  On October 10, 2011 Aetna confirmed the appeal request and contacted Meguerditchian via telephone to inform him that he would need to send evidence he was physically unable to timely call in and report his claim.  (AR 7, 10, 25, 49-51).  On October 12, 2011, Aetna received Meguerditchian's response.  (AR 29, 52).  In his response, Meguerditchian outlined several personal matters that had affected his ability to manage his affairs at the time of the injury.  (AR 8–9, 11–12).  He also informed Aetna that FedEx had required that he return to work under the TRW Program, and placed him on light duty assignment and changed his shift to accommodate his physical condition.  (AR 8–9).

Aetna submitted the appeal brief for supervisory review on October 13, 2011, and the supervisor returned it on October 27, 2011. (AR 52–54).  Again, Aetna denied

---

[1] The MRI report is not part of the Administrative Record because Meguerditchian's STD benefits claim was denied before he provided Aetna with any medical records.

1  Meguerditchian's claim as untimely, noting that the documentation submitted did not
2  indicate any "inability to report the claim on or before the March 17, 2011 deadline."
3  (AR 1).

### III. LEGAL STANDARD

The standard of review of a plan administrator's denial of ERISA benefits depends upon the terms of the benefit plan. Absent contrary language in the plan, the denial is reviewed *de novo*. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989). But if the benefit plan "expressly gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms," the administrator's decision is reviewed for abuse of discretion. *Id.* at 102; *Abatie v. ALTA Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006). The parties here agree that the Plan gives Aetna discretionary authority to interpret the plan's provisions and determine factual matters of eligibility. Accordingly, the Court reviews Aetna's decision to deny Meguerditchian's claim as untimely for abuse of discretion.

Under abuse-of-discretion review, the administrator's decision will generally be upheld if it is reasonable and supported by substantial evidence in the administrative record as a whole. *McKenzie v. Gen. Tel. Co. of Cal.,* 41 F.3d 1310, 1316–17 (9th Cir.1994). The Court does not substitute its own judgment for that of the administrator unless the administrator (1) renders a decision without explanation, (2) relies on clearly erroneous findings of fact, or (3) construes provisions of the plan in a way that conflicts with the plain language of the plan. *Boyd v. Bert Bell/Pete Rozelle NFL Players Ret. Fund*, 410 F.3d 1173 (9th Cir. 2005); *Eley v. Boeing Co.*, 945 F.2d 276, 279 (9th Cir. 1991). But if the plan administrator is also the plan funder, then the court must take account of this conflict of interest and "review the administrator's stated bases for its decision with enhanced skepticism." *Montour v. Hartford Life & Acc. Ins. Co.,* 588 F.3d 623, 631 (9th Cir.2009). In those circumstances, abuse-of-
/ / /

discretion review must be "tempered by skepticism commensurate with the plan administrator's conflict of interest." *Abatie,* 458 F.3d at 959.

The Ninth Circuit has explained,

> The level of skepticism with which a court views a conflicted administrator's decision may be low if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history. A court may weigh a conflict more heavily if, for example, the administrator provides inconsistent reasons for denial, fails adequately to investigate a claim or ask the plaintiff for necessary evidence, fails to credit a claimant's reliable evidence, or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record.

*Id.* at 968–69. The Supreme Court relied on similar logic in *Metropolitan Life Insurance Co. v. Glenn*, holding that a plan administrator's conflict of interest should be "weighed as a factor in determining whether there is an abuse of discretion." 554 U.S. 105, 115 (2008) (internal quotation marks omitted); *see also Burke v. Pitney Bowes Inc. Long–Term Disability Plan*, 544 F.3d 1016, 1024 (9th Cir.2008) (noting that the Glenn framework is "similar to the one provided in *Abatie*").

### IV.  DISCUSSION

Meguerditchian argues that the defendants failed to provide him with sufficiently clear and comprehensive guidance regarding when his disability was considered to have commenced under the STD Benefits Plan. Consequently, Meguerditchian asserts, Defendants' denial of his STD Benefit claim was an abuse of discretion because they failed to comply with ERISA's notice requirements. For the reasons discussed below, the Court agrees.

/ / /

/ / /

6

**A. Proper Defendants**

At the outset, Aetna argues that it has been misjoined and should be dismissed from this action. Aetna maintains that ERISA actions are only permitted against the Plan itself, and as the claims-paying administrator it bears no liability. The Court disagrees.

ERISA specifically provides for the maintenance of civil causes of action by beneficiaries to challenge benefit claim denials by plan administrators. Specifically, § 1132(a)(1)(B) provides,

> A civil action may be brought . . . by a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

Section 1132(a)(3) authorizes a beneficiary to enjoin "any act or practice which violates [ERISA]," or to "obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA]." Thus, by its terms, §1132 "does not "appear to limit which parties may be proper defendants in that civil action." *Cry v. Reliance Std. Life Ins. Co.*, 642 F.3d. 1202, 1205, (9th Cir. 2011).

Indeed, in *Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000), the Supreme Court rejected the suggestion that there was a limitation contained within § 1132(a)(3) itself on who a plaintiff could sue. The Court found that instead the focus is on "redressing the act or practice which violates any provision of ERISA." *Id.* at 246. The Ninth Circuit later expanded, definitively holding that that potential liability under § 1132(a)(1)(B) is not limited to a benefits plan or the plan administrator. *Cry*, 642 F.3d at 1207.

As the Ninth Circuit noted in *Cry*, "it is not enough to identify a plan administrator as a potential defendant . . . the plan administrator can be an entity that has no authority to resolve benefit claims or any responsibility to pay them." *Cry*, 642 F.3d at 1207. Here, FedEx is identified as the plan administrator, but it had nothing to

do with denying Meguerditchian's claim. Rather Aetna denied Meguerditchian's benefit claim. Aetna is, therefore, a logical and proper defendant for an action by Meguerditchian to recover benefits due to him under the terms of the STD Plan.

**A. Conflict of Interest**

Meguerditchian urges the Court to review Aetna's decision with enhanced skepticism, arguing that Aetna has a conflict of interest in claims administration. Defendants urge that there is no conflict of interest because although FedEx is the plan administrator, Aetna is the claims-paying administrator, which has the discretionary authority to made benefit eligibility determinations. Similarly, FedEx urges that because Aetna, as the claims-paying administrator, does not fund the STD plan it also has no conflict of interest. The Court does not agree.

When the same entity that funds an ERISA benefits plan also evaluates claims, the plan administrator faces a structural conflict of interest. *Metro. Life v. Glenn*, 554 U.S. 105, 112 (2008). The fact that FedEx funds the Plan but delegates claims-administration responsibilities to Aetna does not negate a structural conflict outright. In such a situation, the symbiotic relationship between FedEx and Aetna creates an incentive for Aetna to reach results that are favorable to FedEx to foster and sustain their business relationship. *See Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 832 (2003) (citing with approval the lower court's observation that "physicians repeatedly retained by benefits plans may have an incentive to make a finding of 'not disabled' in order to save their employers money and to preserve their own consulting arrangements"); *see also Kurth v. Hartford Life and Accident Ins. Co*., 845 F. Supp. 2d. 1087, 1096 (C.D. Cal. 2012) (describing the incentive in the context of insurers and vendor's reviewing physicians to reach results favorable to the insurer to maintain the business relationship). The fact that FedEx utilizes a company with strong incentive to reach a result favorable to FedEx raises legitimate questions concerning the thoroughness and accuracy of Aenta's benefits determination.

/ / /

But there is no evidence in the record that the potential conflict in any way motivated or influenced Aetna's decision to deny Meguerditchian's STD benefits as untimely. The plan by its terms creates a uniform 60-day reporting requirement. Any administrator—conflicted or not—would be obligated to enforce the limitation. There is also no evidence of procedural irregularities or biased claims administration, and Aetna's stated reason for denial has always remained the same. Because Meguerditchian has failed to connect this conflict and a uniform 60-day window in a causal or meaningful way, the Court does not discount the deference accorded to the administrator decision. Accordingly, the Court applies the abuse-of-discretion standard without enhanced skepticism.

**B. Application of Abuse of Discretion**

Even without enhanced skepticism, deference to the plan administrator's judgment does not mandate that the plan prevails. *Salomaa v. Honda Long Term Disability Plan*, 642 F.3d 666, 675 (9th Cir. 2011) ("'Deference' is not a talismanic word [ ] that can avoid the process of judgment."). For the reasons explained below, the Court finds that Aetna has abused its discretion in denying Meguerditchian's STD benefits claim.

ERISA's central policy goal is to protect benefit-plan participants. *Scharff v. Raytheon Co. Short Term Disability Plan*, 581 F.3d 899, 904 (9th Cir. 2009); 29 U.S.C. § 1001(b). To that end, ERISA "established extensive reporting, disclosure, and fiduciary duty requirements to insure against the possibility that the employee's expectation of the benefit would be defeated through poor management by the plan administrator." *Massachusetts v. Morash*, 490 US 107 (1989)." Employee benefit plans are required to provide plan participants with a Summary Plan Description (SPD)—which is the beneficiary's primary source of information regarding the plan terms and its benefits. *Scharff*, 581 F.3d at 904; 29 U.S.C. § 1022(a). The SPD "must not have the effect [of] misleading, misinforming or failing to inform participants and

/ / /

beneficiaries." *Stahl v. Tony's Bldg. Materials, Inc.*, 875 F.2d 1404, 1406 (9th Cir. 1989) (internal quotation marks omitted).

Section 1022(a) mandates that plan disclosures be "written in a manner calculated to be understood by the average plan participant, and [] be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." Section 1022(b) lists the specific information that the SPD is required to contain. One of the required pieces of information is any "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits." § 1022(b).

Regulations further provide,

> Any description of exception, limitations, reductions, and other restrictions of plan benefits shall not be minimized, rendered obscure or otherwise made to appear unimportant. Such exceptions, limitations, reductions, or restrictions of plan benefits shall be described or summarized in a manner not less prominent than the style, captions, printing type, and prominence used to describe or summarize plan benefits.

29 C.F.R. § 2520.102-2(b). The SPD must also disclose limitations in close conjunction to benefits provisions, or refer the participant to the page numbers on which the relevant restrictions appear. *Id.*

A time limitation in which a beneficiary must report a claim qualifies as a circumstance "which may result in disqualification, ineligibility, or denial or loss of benefits." § 1022(b); *see Dodson v. Woodmen of World Life Ins. Soc'y*, 109 F.3d 436, 439 (8th Cir.1997) (noting that the omission from the SPD of a time limit for filing suit violated § 1022(b) because the time limit was a circumstance that might result in loss of benefits); *see also Scharff*, 581 F.3d at 906. Therefore, the placement and display of the deadline must meet the statutory and regulatory standards.

/ / /

1    Federal courts have also developed a body of ERISA federal common law relating to the SPD. *See Scharff*, 581 F3d at 904 ("The courts are directed to formulate a nationally uniform federal common law to supplement the explicit provisions and general policies set out in ERISA, referring to and guided by principles of state law when appropriate, but governed by the federal policies at issue.") (citing *Menhorn v. Firestone Tire & Rubber Co.*, 738 F.2d 1496, 1500 (9th Cir.1984). One of those common-law principles—the doctrine of reasonable expectations—is at issue in this case.

The Ninth Circuit applies the doctrine of reasonable expectations to interpret ERISA-governed insurance contracts. *Scharff*, 581 F.3d at 904–06. The doctrine applies when a provision in an insurance policy is not a "clear, plain, and conspicuous statement" excluding coverage under the relevant circumstances of the case. *Id.* at 911; *Saltarelli v. Bob Baker Grp. Med. Trust*, 35 F.3d 382, 386 (9th Cir.1994). The plan language is construed in an ordinary and popular sense as a person of average intelligence and experience would do. *Scharff*, 581 F.3d at 906. When the plan terms are ambiguous they are construed against the drafter. *Id.*

In this case, it is not clear from the Plan documents when a beneficiary's disability is considered to have "commenced" for purposes of reporting a claim to Aetna. While an average beneficiary might think that 'disability' refers to the time he or she is injured, it is important to note that FedEx's plan defines 'disability' in terms of timing.

Section 4.2 of the SPD provides that notice of a claim for disability benefits must be given to Aetna—the claims-paying administrator—60 days of the commencement of the employee's disability. (AR 192). The SPD clarifies that "You are considered disabled if a physical or mental illness prevents you from doing your job." (AR 104.) The SPD does not specify that commencement of a disability occurs on the specific date of the incident that renders the beneficiary disabled, but rather
/ / /

1 couches its definition of disability as the employee's inability to perform his or her
2 job.

3 Similarly, the SPD's information regarding the "elimination period," during
4 which employees are not eligible to receive benefits, describes disability in terms of
5 the beneficiaries' inability to work. Section 1.1 (m) provides, "Elimination Period
6 shall mean the period during which a Covered Employee is absent from work on
7 account of Disability . . . but shall in no event be less than seven (7) days, *beginning*
8 *with the first day a Covered Employee is absent from work on account of Disability*."
9 (AR 171) (emphasis added). Thus the STD Plan suggests that an employee need not
10 contact Aetna until he knows that he will be unable to work.

11 FedEx's timing rules are inherently unclear due to the mandatory TRW
12 Program. Because the SPD plan defines 'disability' in terms of absence from work,
13 but FedEx mandates that employees participate in the 90-day TRW Program, an
14 average beneficiary is not able to come to a reasonable consensus on when she is
15 'disabled' within the meaning of the Plan. Nowhere does the SPD explain that notice
16 of a claim must be given within the first 60 days of working under the 90-day TRW
17 program. Thus, although language in the STD plan provides a 60-day window in
18 which beneficiaries must file a claim after commencement of the disability, other
19 language creates confusion and ambiguity on when a disability begins for plan
20 purposes.

21 Accordingly, FedEx has violated ERISA's disclosure and fiduciary
22 requirements, specifically section 1022(a)'s mandate that plan disclosures be "written
23 in a manner calculated to be understood by the average plan participant, and [] be
24 sufficiently accurate and comprehensive to reasonably apprise such participants and
25 beneficiaries of their rights and obligations under the plan." Because Aetna had no
26 discretion[2] to allow Meguerditchian's benefit claim in contravention of the plan's

---

[2] 29 U.S.C. §1104(a)(1)(D) states that the plan must be administered "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]."

plain terms, Aenta's decision to deny benefits in this case was made in the course of, and was tainted by, the ERISA violations. Consequently, Aetna's decision to deny Meguerditchian's claim based on the 60-day notice requirement was arbitrary and capricious as a matter of law. *Accord, White v. Jacobs Eng'g Grp. Long Term Disability Benefit Plan*, 896 F.2d 344, 350 (9th Cir. 1989) (holding that a plan's noncompliance with ERISA's notice provisions prevented a contractual limitations period from beginning to run). This finding appropriately serves the federal policies underlying ERISA, including provision of adequate information to plan participants and protecting their interests.

## V. CONCLUSION

For the reasons discussed above, the Court **REVERSES** the administrator's denial of Meguerditchian's STD benefits claim as untimely and **REMANDS** this case to the claims-paying administrator for a decision on the merits. A judgment will issue.

**IT IS SO ORDERED.**

Feburary 21, 2014

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**