O

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 ℭ𝔬𝔲𝔯𝔱
# ℭ𝔢𝔫𝔱𝔯𝔞𝔩 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔬𝔣 ℭ𝔞𝔩𝔦𝔣𝔬𝔯𝔫𝔦𝔞

|  |  |
|---|---|
| NERSES MEGUERDITCHIAN,<br><br>    Plaintiff,<br><br>    v.<br><br>AETNA LIFE INSURANCE COMPANY, FEDERAL EXPRESS CORPORATION SHORT TERM DISABILITY PLAN; DOES 1–10, inclusive,<br><br>    Defendants. | Case № 2:12-cv-10999-ODW(JCx)<br><br>**ORDER GRANTING IN PART MOTION FOR ATTORNEY FEES AND COSTS [48]** |

## I.    INTRODUCTION

Defendant Federal Express Corporation ("FedEx") employed Plaintiff Nerses Meguerditchian as a Senior Global Vehicle Technician.  When Meguerditchian injured his back on the job, he had to stop working.  He submitted a claim for short-term disability benefits to Defendant Aetna Life Insurance Company, FedEx's claims-paying administrator.  Aetna denied the claim as untimely.

After Meguerditchian appealed to this Court under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–461, the Court found that the plan's timing language was inherently confusing and that Aetna's denial was an abuse

of discretion.  The Court reversed Aetna's decision and remanded for consideration on the claim's merits.  Meguerditchian now moves for attorneys' fees and costs.  The Court finds that $600 per hour is the reasonable hourly rate for this case.  The Court also declines to apply a multiplier, finding that this case is not "exceptional" within the Ninth Circuit's definition.[1]

## II.   FACTUAL BACKGROUND[2]

Meguerditchian worked for FedEx as a Senior Global Vehicle Technician. (ECF No. 37, at 2.)  FedEx sponsors a Short-Term Disability Plan ("STD Plan") for its employees.  (*Id.*)  Aetna Life Insurance Company acts as the claims-paying administrator for the plan.  (*Id.*)  Aetna has full discretion to determine benefits eligibility and interpret the plan.  (*Id.*)

In January 2011, Meguerditchian injured his back while working on a FedEx vehicle.  (*Id.* at 3–4.)  His physician instructed him to stop working.  (*Id.* at 4.) Meguerditchian participated in FedEx's mandatory Temporary Return to Work Program ("TRW Program") for the maximum 90-day period.  (*Id.* at 3.)  Eight days after finishing the TRW Program, he submitted an STD claim to Aetna.  Aetna denied the claim as untimely under the 60-day notification deadline.  (*Id.* at 4.)  Aetna also denied his subsequent administrative appeal.  (*Id.* at 4–5.)

On December 27, 2012, Meguerditchian filed this ERISA action against FedEx and Aetna challenging the STD claim denial.  (ECF No. 1.)  The parties briefed the appeal's merits.  On February 21, 2014, the Court reversed Aetna's denial.  (ECF No. 37.)  The Court found that FedEx had "violated ERISA's disclosure and fiduciary requirements, specifically section 1022(a)'s mandate that plan disclosures be 'written in a manner calculated to be understood by the average plan participant, and [] be

---

[1] After carefully considering the papers filed with respect to these Motions, the Court deems the matters appropriate for decision without oral argument.  Fed. R. Civ. P. 78; L.R. 7-15.
[2] The Court fully incorporates the factual background and analysis contained in its February 21, 2014 Order Reversing Administrator's Decision and Remanding for Decision on the Merits.  (ECF No. 37.)  The Court includes a brief summary here only for the reader's convenience.

sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan.'" (*Id.* at 12.)  The Court reached this conclusion after reviewing the relevant plan provision dealing with when a participant had to file an STD benefits claim vis-à-vis the TRW Program.  Since the "timely rules are inherently unclear," the Court found that "Aetna's decision to deny Meguerditchian's claim based on the 60-day notice requirement was arbitrary and capricious as a matter of law." (*Id.* at 12–13.)  The Court accordingly remanded the claim to Aetna for a merits-based decision.  (*Id.* at 13.)

Meguerditchian now moves for $32,441.25 in attorneys' fees plus $817.25 in costs under ERISA.  (ECF No. 48.)  Neither defendant has opposed the Motion.  That Motion is now before the Court for decision.

### III.   LEGAL STANDARD

ERISA provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1).  The United States Supreme Court has held that an ERISA attorneys'-fees award does not hinge on whether a particular litigant is the prevailing party; rather, the litigant must only demonstrate "some degree of success on the merits" to receive a § 1132(g)(1) fee award. *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252, 255 (2010).

The Ninth Circuit has expounded several factors a district court should consider in deciding whether to award attorneys' fees under ERISA:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

/ / /

*Hummell v. S. E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980).  The court has also adopted a "special circumstances" rule under which a successful ERISA participant "should ordinarily recover an attorney's fees award unless special circumstances would render such an award unjust." *McElwaine v. US W., Inc.*, 176 F.3d 1167, 1172 (9th Cir. 1999) (internal quotation marks omitted).

## IV.   DISCUSSION

Meguerditchian requests a discretionary award of attorneys' fees under ERISA as well as an upward adjustment based on a 1.5-times multiplier.  The Court finds that an attorneys'-fees award is proper but not an upward adjustment.

**A.   Whether to award fees**

An award of fees under ERISA § 1132(g)(1) is purely discretionary.  But the Court finds that an attorneys'-fees award is appropriate in this case given the Ninth Circuit's special-circumstances rule.  Meguerditchian is undoubtedly the prevailing party in this litigation, as he achieved a reversal of Aetna's decision and remand for a decision on his claim's merits.  Moreover, neither defendant has opposed this Motion, providing further support for the propriety of a fee award.

**B.   Lodestar figure**

The Ninth Circuit employs a hybrid lodestar/multiplier approach to determining reasonable attorneys' fees under § 1132(g)(1).  *McElwaine*, 176 F.3d at 1173; *D'Emanuele v. Montgomery Ward Co.,* 904 F.2d 1379, 1383 (9th Cir. 1990).  To calculate the lodestar amount, one must "multiply the number of hours reasonably expended by the attorney(s) on the litigation by a reasonable hourly rate, raising or lowering the lodestar according to factors identified by this circuit." *McElwaine*, 176 F.3d at 1173.

In determining the reasonable hourly rate, a court may properly consider attorney declarations establishing the prevailing rates in the legal community. *Guam Soc'y of Obstetricians & Gynecologists v. Ada*, 100 F.3d 691, 696 (9th Cir. 1996). The court should also consider various factors expounded by the Ninth Circuit:

(1) the time and labor required, (2) the novelty and difficulty of the
questions involved, (3) the skill requisite to perform the legal service
properly, (4) the preclusion of other employment by the attorney due to
acceptance of the case, (5) the customary fee, (6) whether the fee is fixed
or contingent, (7) time limitations imposed by the client or the
circumstances, (8) the amount involved and the results obtained, (9) the
experience, reputation, and ability of the attorneys, (10) the
'undesirability' of the case, (11) the nature and length of the professional
relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

Additionally, when reviewing the hours documented by the attorney, the court
must excise any hours "not reasonably expended" on the litigation. *Hensley v.
Eckerhart*, 461 U.S. 424, 434 (1983).

### 1. Reasonable hourly rate

Meguerditchian's counsel contends that $650 is a reasonably hourly rate for his
services.[3] (Zietz Decl. ¶ 15.) Zietz has been admitted to practice before this Court for
17 years. (*Id.* ¶ 2.) From 2003 to 2012, he worked at a law firm where he handled
hundreds of ERISA cases involving claim denials. (*Id.*) On January 1, 2012, he left
the firm and founded his own. (*Id.*) He has already handled around 100 claim-denial
ERISA cases. (*Id.*) Zietz considers himself "an ERISA specialist" and has performed
consulting services for several attorneys. (*Id.* ¶¶ 11–14.)

Zietz submitted a declaration from another attorney specializing in ERISA
matters, Glenn Kantor. (Zietz Decl. Ex. 2.) Kantor states that the current hourly rate
for partners at his firm is $600. (Kantor Decl. ¶ 12.) Kantor also indicates that a
District Judge in the Northern District of California recently approved a $650-per-

---

[3] Meguerditchian also seeks compensation for 5.3 secretarial hours at $75 per hour. Though not
supported by accompanying declarations or other supporting evidence, the Court finds that $75.00
per hour for secretarial work is reasonable in light of the Court's own experience in ruling on similar
requests.

1  hour billing rate for Kantor's wife in an ERISA case.  (*Id.* ¶ 18; *see also* Zietz Decl.
2  Ex. 3.)

3      The Court finds that $650 per hour is unreasonably high in light of the *Kerr*
4  factors and supporting evidence submitted by Meguerditchian.  The declaration that
5  Meguerditchian uses to support the $650-per-hour request—the Kantor Declaration—
6  establishes that $600 per hour is the prevailing reasonable hourly rate.  Kantor has
7  eight years' more experience than Zietz and yet only bills $600 per hour.  Kantor's
8  firm only recently raised the hourly billing rate for partners to $600 per hour in 2011;
9  the rate had been $550 per hour before that time.  Kantor also only charges $600 per
10 hour for consultations.  Moreover, Kantor indicates that Judge Snyder approved his
11 $600-per-hour rate just over a year ago in another Central District of California
12 ERISA case.

13     While Kantor's wife may have received approval of her $650-per-hour rate, the
14 Court does not find that result persuasive.  She received that rate after litigating an
15 ERISA case in the Northern District of California at San Francisco.  While the Los
16 Angeles legal market is certainly competitive and expensive, San Francisco is even
17 more so.  It therefore makes sense that she would receive a $50-per-hour bump in her
18 hourly rate.  Additionally, she has at least 13 years' more experience than Zietz—
19 further compelling the conclusion that $650 per hour is unreasonably high for Zietz.

20     An analysis of the *Kerr* factors further compels the conclusion that $600 per
21 hour is a more reasonable hourly rate for this litigation.  Zietz, along with his
22 secretary, only spent a total of 37.65 hours on this action.  While undoubtedly
23 significant, the number hardly establishes that this litigation was extremely time-
24 consuming or that it precluded Zietz from accepting other matters.  In this Court's
25 experience, some attorneys spend about that amount simply preparing a summary-
26 judgment motion.

27     ERISA is a tangled morass of statutory and regulatory provisions supplemented
28 by significant federal common law.  The difficulty in mastering ERISA subject matter

1  certainly weighs in favor of a higher fee award, but the Court finds that $600 per hour

2  adequately captures the skill necessitated by an ERISA denial case.

3      Finally, Zietz of course achieved a very favorable result for his client: reversal

4  of the claim denial and remand for a merits-based decision.  But Meguerditchian is not

5  out of the weeds yet; he still has to convince Aetna, consistent with the Plan language,

6  to approve his STD benefits request.  The results obtained thus counsel in favor a fee

7  award—just not an extremely high one.

8      The Court accordingly adopts $600 per hour as the reasonably hourly rate for

9  Zietz's work in this matter.

10      *2.   Number of hours reasonably expended*

11      Meguerditchian seeks compensation for a total of 37.65 hours, including 5.3

12  secretarial hours.  The Court has reviewed each line item on Zietz's billing records

13  and finds nothing inappropriate.  The Court consequently approves 37.65 total hours

14  as the number of hours reasonably expended on this litigation.

15      *3.   Lodestar figure*

16      Multiplying these figures together, the Court finds the lodestar figure in this

17  case is $19,807.50.  Table 1 provides a breakdown of the Court's calculation.

18  **Table 1**

| Biller | Hourly rate | Number of hours | Total |
| --- | --- | --- | --- |
| Kevin M. Zietz (attorney) | $600 | 32.35 | $19,410.00 |
| Stephanie Villareal (secretary) | $75 | 5.3 | $397.50 |
| | | **Grand total** | $19,807.50 |

23  **C.   Multiplier**

24      Once a court calculates the lodestar figure, the court "may adjust the lodestar

25  upward or downward using a 'multiplier' based on factors not subsumed in the initial

26  calculation of the lodestar." *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041,

27  1045 (9th Cir. 2000).  But the lodestar figure is "presumptively reasonable," meaning

28  that the district court may only adjust the lodestar amount up or down in "rare" or

"exceptional" cases supported by "specific evidence." *Id.* An exceptional result is only one "not thought likely to be achieved"—not merely a result that "one could have reasonably expected at the start of the litigation." *Elser v. I.A.M. Nat. Pension Fund*, 579 F. Supp. 1375, 1381 (C.D. Cal. 1984).

Moreover, in determining whether to employ a multiplier, a court may not consider any factors that are subsumed within the original lodestar analysis, including the novelty and complexity of the issues; special skill and experience of counsel; quality of the representation; and results obtained. *Blum v. Stenson*, 465 U.S. 886, 898–901 (1984).

Meguerditchian requests that the Court apply a 1.5 multiplier to his attorneys'-fees award to reflect the undesirability of this case. He contends that given that the maximum STD benefits period is 25 weeks and that the Plan offsets benefits by any other income earned, including TRW Program income, the amount of money at stake has always been very low. Meguerditchian further argues that his counsel achieved an exceptional result by overcoming an abuse-of-discretion standard. Lastly, he asserts that Defendants believed that he had no chance of success since they encouraged him to dismiss his action because California's notice-prejudice rule does not apply to FedEx's self-insured STD Plan.

The Court finds that a multiplier is not appropriate in this case. The Ninth Circuit has made clear that the lodestar amount—here, $19,807.50—is presumptively reasonable. The Court already engaged in a full-scale analysis of the *Kerr* factors in concluding that $600 per hour was a reasonable hourly rate to fully compensate Zietz for his work on this case. The multiplier only comes into play when the result is "exceptional." *Van Gerwen*, 214 F.3d at 1045. But one would be hard-pressed to say that a reversal of Aetna's denial is a result that one could not have reasonably expected at the start of the litigation. *See Elser*, 579 F. Supp. at 1381. Indeed, a reversal is exactly what Meguerditchian requested. The fact that Meguerditchian got exactly what he asked for does not transport this action into "exceptional" territory.

Neither does the Court find that the undesirability of Meguerditchian's case warrants an upward adjustment. ERISA cases involving single-person claim denials are almost always going to involve relatively small amounts in comparison to the oftentimes multimillion-dollar cases frequently litigated in federal court. A firm specializing in ERISA matters such as Zietz's firm must therefore account for the small amounts of money at stake, especially when setting its reasonable hourly rates. If the Court were to award a multiplier in this case do to the low sum of money at stake, the Court would essentially have to employ a multiplier in every ERISA case. The Ninth Circuit's emphasis multiplier case law would quickly lose its exceptionality underpinning.

The Court therefore finds that the $19,807.50 lodestar figure is presumptively reasonable and declines to award an additional multiplier in light of the lack of exceptionality.

**D.     Costs**

Lastly, Meguerditchian requests $817.25 in costs. The United States Code provides that a judge or clerk may tax various costs, including fees imposed by the court clerk. 29 U.S.C. § 1920. The section also provides that a "bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree." Federal Rule of Civil Procedure 54 expands upon this statutory foundation, providing that unless otherwise provided, costs "should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). The Central District of California has implemented this rule via Local Rule 54-2, which states that the party entitled to costs shall file a completed Form CV-59 with the Clerk of Court within 14 days after entry of judgment. L.R. 54-2.1.

The Court notes that Meguerditchian has already filed an Application to the Clerk to Tax Costs against Defendants. (ECF Nos. 45, 52.) That Application is still pending. While the Court confirms for the Clerk of Court that Meguerditchian is the "prevailing party" in this litigation and thus entitled to costs, the Court will not

circumvent the established procedures for seeking costs.  The Clerk of Court shall proceed with the Application as is normal procedure.

## V.    CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** Meguerditchian's Motion for Attorney Fees and awards $19,807.50 in reasonable attorneys' fees.  (ECF No. 48.)  The Court defers to the Clerk of Court for the taxing of costs.

**IT IS SO ORDERED.**

August 12, 2014

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**